HARRIS, Judge.
Appellant was indicted by the Mobile County Grand Jury under a two count indictment for the offenses of trafficking in marijuana and unlawful possession of Methaqualone. Immediately prior to trial, the State orally moved to nolle prósse the original indictment and requested permission to serve a new indictment upon appellant. The State represented, without objection from appellant, that appellant would consent to be tried that day under the new indictment. The court orally ordered that the new indictment be served on the appellant, and the case proceeded to trial without appellant having been arraigned under the new indictment. The jury returned a verdict of guilty as to the count charging appellant with trafficking in marijuana, and the court sentenced appellant to fifteen years’ imprisonment. Appellant does not question the sufficiency of the evidence on appeal.
Mobile Police Officer Larry Mote testified that a deal was made with Willie Watts, appellant’s brother, to set up a drug purchase between appellant and the police undercover agents. The deal was arranged in exchange for the police refraining from prosecuting Willie on certain drug charges. Officer Mote’s duty was to set up surveillance at the pre-arranged location prior to the time the undercover agent was to meet appellant.
*202 On January 1, 1981, Officer Mote, who lay in hiding, observed appellant and his brother drive up to the Texaco Service Station on Moffat Road. The automobile, driven by appellant, was a white Nova with a Mississippi license plate. After filling the vehicle with gasoline, one of the occupants of the vehicle backed it up to the door of the service station office. At that point, a van driven by undercover agent Thomas Calhoun arrived at the service station. Agent Calhoun got out of his vehicle, walked over to the appellant and Willie Watts, and engaged in conversation with them. The appellant then unlocked the trunk of the Nova and Agent Calhoun reached into the trunk as if to examine something. Appellant reclosed the vehicle’s trunk and the three men started to walk into the office. Agent Calhoun then pulled his weapon, the other two men raised their hands, and Officer Mote and other officers on the scene ran to assist Agent Calhoun.
Officer Mote obtained the Nova keys, opened the trunk, examined the contents, and drove the vehicle to his office. There he turned the trunk contents over to the lab technician, Ms. Alilee Pillman.
Ms. Alilee Pillman testified she was a toxicologist and the director of the Mobile Police Department Crime Laboratory. She indicated she received twenty five plastic bags of plant material from Officer Mote on January 1, 1981 at 8:55 p.m. Her analysis of the contents of the twenty-five bags revealed they contained marijuana containing tetrahydrocannabinol, with a total weight of 24.9 pounds. An examination of random samples of 3000 pills also received from Officer Mote indicated they were counterfeit quaalude tablets which, however, did contain the controlled substance, Methaqualone, found in quaalude tablets.
Officer Thomas Calhoun testified he met the appellant at the Texaco Service Station on Moffat Road in Mobile County on January 1, 1981 at 8:00 p.m. pursuant to a pre-arranged drug sale.
When he arrived at the station, Officer Calhoun observed a white Chevrolet Nova backed up to the front door of the station. Appellant unlocked the trunk of the Nova and Officer Calhoun observed a large brown bag which he tore open to reveal numerous ziplock plastic bags of what appeared to be marijuana. He asked appellant where the “ludes,” or quaaludes, were and appellant reached under the left-hand side of the trunk and obtained a paper bag. Officer Calhoun opened that bag and observed ziplock plastic bags filled with white tablets. As Officer Calhoun opened one bag appellant stated, “That one only has 100 in it.”
After examining one of the pills, Calhoun asked appellant if he could get some more, and appellant told him he could get as many as he wanted within twenty-four hours. The pre-arranged drug sale having called for 3000 quaaludes and twenty-six pounds of marijuana, Calhoun asked appellant if those amounts were present and appellant nodded his head in confirmation. Calhoun then stated “Let’s settle up,” and as appellant and Willie Watts walked toward the office, Calhoun pulled his revolver and identified himself.
Appellant testified in his own behalf and stated he was unaware of any pre-arranged drug deal. His purpose in being with his brother the night he was arrested was to assist Willie with an outboard motor which his brother was supposed to be attempting to sell to raise money for his sick baby. He stated he never pulled anything out of the trunk, and never spoke to the officer before -he was placed under arrest. He further stated he was not aware of the presence of the drugs in the Nova, and that he had never seen that vehicle before that day.
Appellant asserts that because he was not arraigned and did not formally plead under the substituted indictment, there should have been no trial on the merits and his conviction must be reversed.
The record reflects the following occurred immediately prior to trial:
“THE COURT: Any motions now?
*203 “MR. HARRISON: Your Honor, we would move to nolle prosse the old indictment. The defendant has been reindict-ed, and we ask for service of a new indictment, and we understand the defendant will consent to be tried under that today.
“THE COURT: Now, the old indictment number is what, now?
“MR. HARRISON: I think it is 81-584.
“THE COURT: Now, wait a minute, I think it is another number.
“MR. HARRISON: 564.
“THE COURT: Yes, it is 81-564, and that’s the one that you move to nolle prosse?
“MR. HARRISON: Yes, sir.
“THE COURT: And at this time you move the Court to allow the service on the defendant of what number?
“MR. HARRISON: Judge, it has not been assigned a number, and won’t be assigned a number until he is served.
“MR. HOLLOWAY: There is a Grand Jury number.
“THE COURT: What is the Grand Jury number?
“MR. HARRISON: Grand Jury No. 159 of June, 1981.
“THE COURT: And you say the charge set out in that new indictment is the same as the charge set out in 81-564?
“MR. HARRISON: Yes, sir.
“THE COURT: Okay, serve that, Mr. Tanner, on the defendant. Now, the number of the case will be CC 82-2257.”
The case proceeded to trial with neither expressed objection nor consent by appellant. Only after the jury had returned its verdict did the appellant question the absence of an arraignment, and point out his failure to plead under the substituted indictment, as follows:
“MR. HOLLOWAY: Judge, you know, this is a case that the new indictment was rushed down here, and we went to trial on it.
“THE COURT: But the charge was the same as in the old indictment, there was just some ...
“MR. HARRISON: Judge, he had been served back in May and made a bond on that. There is nothing surprising to this defendant about this case.
“MR. HOLLOWAY: It is not a surprise in the case, Judge, he’s just never been arraigned on this indictment.
“THE COURT: Well, that indictment was ... I mean, the arraignment was waived by the defense.
“MR. HOLLOWAY: No, sir, Judge. You can’t waive an arraignment. A man has to plead.
“THE COURT: Isn’t there some question to the Court as to whether or not there was necessary, even a new arraignment by virtue of the fact this was a substitute indictment, because the Code does provide where there is a demurrer there need not be a new arraignment. So I think it is very questionable that he need to be arraigned. But the point being, nevertheless, the Court deems it reasonable to make the bond $20,000 to be provided by a good and sufficient surety, pending the Court’s determination as to what sentencing should be imposed after evaluation of this defendant’s record as to whether or not he has got prior convictions or what. Now, I am going to do this: I am going to rush the Probation Department to give me that report, and set it for sentencing for next Wednesday morning. So the defendant will be before the Court next Wednesday morning at 8:30 in the event he makes the bond imposed by the Court.
“MR. HOLLOWAY: But judge, I would like to make this statement on the record at this time. This defendant has never, and I think the record will bear me out, waived arraignment in this case. In fact, there was all this confusion about which indictment was coming in. He never, at any time, waived arraignment in this case, and he has never been called upon to plead to this indictment.
“THE COURT: Do you concede that?
“MR. HARRISON: No, sir. He plead not guilty.
*204 “THE COURT: I think the record will have to stand for that, Mr. Holloway.
“MR. HOLLOWAY: Well, the transcript, Judge, I know the Clerk’s office will automatically put a note on the docket sheet, but I am talking about the transcript and all of our proceedings throughout this case have been on the transcript. I think the Court will agree to that.
“THE COURT: We shall cross that bridge at the appropriate time. Suffice it to be for this time, the Court would impose the additional bond on the defendant, and the sentencing where the motion by the defense to delay sentencing until a presentence report is obtained will be granted, and the report will be returned to this court 8:30 next Wednesday morning.”
We have carefully searched the record on appeal and find no evidence of any arraignment, under either indictment, is present for our review. While the trial judge and prosecutor indicated there may have been a prior arraignment under the original indictment, it is not present in the record. Neither does the record reveal the nature of nor the necessity for the change in the original indictment.
The record, as it appears before us, indicates that appellant was not arraigned under this indictment, did not himself or by counsel enter a plea, and that appellant did not have a plea entered for him by the trial court upon his failure or neglect to plea.
As in Kerr v. State, 416 So.2d 781 (Ala.Cr.App.1982), the court reporter’s case action summary indicates no arraignment date nor date of plea under either indictment. While the verdict, judgment, and sentence are properly reflected, there is no reference to either an arraignment or a plea by, or on behalf of the appellant.
“Because of the absence of any evidence of an ‘arraignment and plea’ or a showing of a satisfactory substitute therefor [see cases cited in Town of Gulf Shores v. Jones, 412 So.2d 1259, 1261 (Ala.Cr.App.1982)], the judgment and sentence of the trial court below must be reversed and this cause must be remanded to the trial court for a new trial_” (Citations omitted). Kerr v. State, 416 So.2d 781, 782 (Ala.Cr.App.1982).
Because reversal is required for the reasons stated above, we pretermit discussion of the other issues raised by appellant. However, we do wish to point out the mandatory nature of the fine required by § 20-2-80, Code of Alabama 1975. Smith v. State, 436 So.2d 1 (Ala.Crim.App.1982).
REVERSED AND REMANDED.
All the Judges concur.